## STATE *v.* CHRISTOPHER J. MARSHALL.

In an indictment for illegal voting at a town meeting, it is sufficient to allege that such meeting was duly holden, without stating how, or by what authority, it was warned.

Where it is alleged, that town meeting was duly holden for the election of two representatives to the General Court, and that the inhabitants were also "called on to give in their votes for Members of Congress," &c., it was *held*, that, in respect to the representatives to Congress, as well as representatives to the General Court, these allegations were to be regarded as descriptive of the purpose for which the meeting was called, and not at a meeting called for another purpose, votes for a member of Congress were called for.

The law, requiring six months residence in a town or ward to entitle a person to vote, is valid and constitutional.

To establish the fact, that the respondent was not entitled to vote in the ward in question, it may be sufficient to prove the circumstances of his actual residence during the year previous to the election; and the State is not necessarily bound to prove directly where his domicil was before that time, or that it had not been in the ward in question.

THIS is an indictment for illegal voting.    The bill sets forth, that, "on the tenth day of March A. D. 1863, at the City of Portsmouth, in the County of Rockingham aforesaid, a town meeting of the legal voters of Ward Number Three, in said Portsmouth, in the county aforesaid, for the election of two representatives to represent said ward in the General Court of said State, was then and there duly holden, at which said town meeting the inhabitants of said ward legally qualified to vote therein were also called on to give in their votes for Governor of said State, for one Railroad Commissioner, for a Representative in the Congress of

the United States from Congressional District Number One of said State, for Councillor from Councillor District Number One in said State, for County Officers for the County of Rockingham aforesaid, and for Senator from Senatorial District Number One of said State. And the jurors aforesaid, upon their oath aforesaid, do further present that Christopher J. Marshall of Portsmouth aforesaid, yeoman, then and there not being a legal voter in said ward, and then and there well knowing himself not to be a legal voter in said ward, did then and there, at said election, knowingly and willfully give in a vote for a Representative in the Congress of the United States from Congressional District Number One of said State, contrary to the form of the statute," &c.

Before the trial the defendant moved that the indictment be quashed as not charging any crime for which judgment can be rendered against the defendant, for the following reasons :

1. That it does not describe any legal meeting for the choice of officers, holden in Ward Three in Portsmouth.

2. That it does not show or aver that the meeting was called by any competent authority.

3. Nor that the meeting was legally called or holden for the choice of Representative in Congress, or for the purpose of voting for that officer.

4. Nor that the legal voters of Ward Three were called upon to vote for Representative in Congress by the officers of the meeting or by any competent authority.

5. That it is not properly averred or shown where the defendant voted ; but only that he voted at the election, without showing that the vote was given in Ward Three, or at the meeting described in the indictment.

The court overruled the motion to quash, and the trial proceeded upon the plea of not guilty.

No witness was called or evidence offered on the part of the defendant. From the witnesses offered by the State it appeared that the defendant enlisted in the Second Regiment of New Hampshire Volunteers at the time of its formation, and while it was stationed within the limits of Ward Three ; that he remained with the regiment in said ward until it left for the seat of war ; that the defendant returned from the war about the last of June A. D. 1862, and immediately went to the house of Mrs. L. A. Wendell, in Ward One in Portsmouth to board, and continued to board there, working at the Navy Yard in Kittery, Maine, until Christmas of the same year.   He then married a resident of Ward Three, and went into Ward Three to reside with his wife, and dwelt and had his home there from Christmas, A. D. 1862, until the annual election on the 10th of March A. D. 1863, and still resides there.   No other evidence was offered as to the residence, nativity, or citizenship of the defendant.   Whereupon the court charged the jury, that defendant was not a legal voter in Ward Three unless he had dwelt and had his home in that ward for six months next preceding said election.

The defendant requested the court to charge the jury—

1. That the burden of proof is on the prosecution, to prove that the defendant had had no legal residence in Ward Three; and that for the purposes of this trial the defendant is to be presumed to be a legal voter in Ward Three until the contrary is shown.

2. That a temporary absence from the place of his residence did not affect his citizenship or right to vote; and that the jury are to determine, from the evidence, whether his absence in the army, or his boarding at Mrs. Wendell's, were temporary in their nature.

The court charged the jury in favor of the first proposition involved in request No. 1, and it was for the jury to weigh the testimony of Mrs. Wendell and her daughter-in-law, to determine whether the respondent had not his legal residence in Ward One, from the last of June 1862, to Christmas of the same year; also, that the general proposition of defendant as to a temporary absence was correct, but it was for the jury to determine how far this principle was applicable to the facts as actually proved in this case.

Two witnesses testified that they saw the defendant offer and give a vote to the moderator of the town meeting in Ward Three, at the annual election on the 10th of March 1863; and one of said witnesses swore that he read on said vote the words, "Daniel Marcy." The records of that meeting showed no vote given for Daniel Marcy except for Representative in Congress; and the names of 360 persons were checked on the check-list used at that meeting, including the name of defendant, and the record shows precisely that number of votes for Representative in Congress. The moderator of the meeting was not examined as a witness, and no other evidence was offered to show that the paper offered by the defendant was counted as a vote. By vote of the meeting the votes for Governor and all the officers named in the indictment were given in upon one ballot; but there was no evidence (except as above set forth) that the defendant offered a vote designated as for Representative in Congress. Thereupon the defendant moved the court to direct a verdict for the defendant, or to instruct the jury that there was no sufficient evidence to sustain the charge in the indictment, that the defendant voted for a Representative in Congress. But the court declined so to do.

The jury found a verdict of guilty; and the defendant moves that the verdict be set aside and for a new trial, and in arrest of judgment, for the reasons above set forth.

*Hatch,* for respondent.

I. The defendant insists that the indictment ought to have been quashed, and that judgment ought now to be arrested, for the reasons particularly set forth in the motion to quash, recited in the case.

II. The case shows that defendant dwelt and had his home in Ward 3, at the time he is said to have voted. He had the right to vote, and the charge of the court, that six months residence was necessary, was

erroneous.    Const. of N. H. Part II, sec. 28 ; *Williams* v. *Whiting,* 11 Mass., 433 ; *Lincoln* v. *Hapgood,* do. 355.

III.    The defendant understood the court to refuse to charge the jury, that the burden of proof was on the prosecutor to prove that defendant had no legal residence in Ward 3 ; and that for the purposes of the trial the defendant was to be presumed to be a legal voter in Ward 3, until the contrary is shown.    And he will move for an amendment of the case in this particular ; and will insist that the charge should have been as requested by him.

IV.    There was no sufficient evidence that the defendant was not a legal voter in Ward 3.    The facts proved by the prosecution do not tend to negative the idea, that defendant may have had an established residence in Ward 3, before he enlisted in the army, from which his subsequent absence was merely temporary.    The prosecutor should have shown his true residence, or affirmatively the want of a residence in Ward 3.

V.    There was no legal or sufficient evidence that defendant voted for " a Representative in Congress."    The record of the meeting, not confirmed or explained by the moderator, was not legal evidence ; and, if admissible, it was insufficient.

*Bell,* for the State.

I.    As to the objections to the indictment—

It alleges that a town meeting of the legal voters, &c., for the election, &c., was duly holden,&c., at which the inhabitants, &c., were called on to give in their votes for Representative in Congress, &c.

It is objected,that this meeting was not alleged to have been called by any competent authority ; but it is believed that this is not necessary,and the forms of indictment in such cases contain no such allegations. Davis, Cr. Jus. (Heard's Ed.) 419 *et seq.* ; Wharton, Cr. Prec. 594 *et seq.* giving also English forms ; Train & Heard, Prec. 183 *et seq.*

If it is not necessary to set forth the authority by which the meeting was called, neither should it be, to set forth the authority by which the electors were called on to vote for a Representative in Congress.    The authority is a matter to be shown in evidence, merely.

The objection, that it is not properly averred where the respondent voted, &c., seems to be answered by the decision of the motion in arrest, in *Commonwealth* v. *Shaw,* 7 Met. 52.    If any weight could be attached to these objections, we submit, that, after verdict, they cannot be sustained.

II.    It was incumbent on the government to prove that the respondent had not his residence in Ward 3 for the six months next preceding the election ; and proving what the jury must, under the instructions of court, have found,—that he had his residence in Ward 1, within these six months,—made out that part of the government's case.    The evidence was entirely sufficient for the purpose, especially in view of the fact that the matter was one peculiarly within the respondent's knowledge. *Commonwealth* v. *Bradford,* 9 Met. 271.

The constitutionality of the statute which requires a residence of six months in a town or ward, as a qualification for voting therein, has been established by this court in the case of *Davis* v. *School District in Haverhill*, (decided Grafton Dec. T. 1862.)

III. Why the testimony of the moderator should be required "to confirm or explain the record of the meeting," it is not easy to see.

The evidence introduced, proves the allegation of voting for a Representative in Congress, in two ways :—

1. The names of 360 persons were checked as having voted, and there were 360 votes cast for Representative in Congress. Every man whose name was checked must therefore have voted for that officer. The respondent's name was so checked; he must therefore have voted for Representative in Congress.

2. No vote was given in for Daniel Marcy for any office except that of Representative in Congress. The respondent gave in a vote for Daniel Marcy for some office; consequently it must have been for the office of Representative in Congress.

No reason occurs to us why this evidence is not admissible; and, if admitted, the jury could not fail to reach the result at which they arrived in this case.

BELLOWS, J.   The indictment alleges, that a town meeting for the choice of two Representatives to the General Court, on the tenth day of March 1863, was *duly holden*; at which said town meeting the inhabitants of said Ward legally qualified to vote therein were *also called on to give in* their votes for sundry other officers, and, among them, for a Representative in the Congress of the United States from Congressional District Number One.

It is objected by the respondent, that this part of the indictment is defective, because it does not aver that the meeting was called by proper authority, and therefore that no legal meeting is shown. But we think that it is not necessary to set forth the authority by which the meeting is called, or the manner of calling it. It is alleged that a town meeting was *duly holden*, and that is sufficient; and it is for the prosecutor to sustain the allegation by proof of a legal warning. Nor is there anything in the nature of the case, that requires, by way of notice to the respondent, a statement of the authority under which the meeting is called. On the contrary, the difference in the mode of calling such meetings, or the authority under which they are called, is but slight; and the whole in all cases becomes matter of record, and accessible to every one. And it stands much like indictments for not repairing highways, where it is held that it is sufficient to allege that it is a highway, without stating by what authority or when it was established.   3 Ch. Cr. Law, 570, 2 Saund. Rep. 158, N. 4; *Aspindall* v. *Brown*, 3 T. R. 265. And such is our practice.

So, in the case of bribery of a judge or other officer, it is not necessary to show by what authority such officer was appointed. Wharton's Precedents, 594, and notes.   So, in the case of the forgery of a bank

note, it is not necessary that the indictment should show by what authority the bank was created.  3 Chitty, Cr. Law, 810.

In the case of indictments for fraudulent voting at elections, the form's do not state the authority under which the elections were held.  Wharton's Prec. 596–7, and notes.  And the same principle is recognized in *State* v. *Randles*, 7 Humph. Tenn. Rep. 9 ; *Com* v. *Silsbee*, 9 Mass. 417 ; *Com* v. *Shaw*, 7 Met. 52.  The case of *State* v. *Bailey*, 21 Maine Reports, 62, is directly in point, it being held, that it was suffi · cient to allege that the legal voters were convened, according to the constitution and laws of the State, in legal town meeting, for the choice of town officers, without stating that it was called by warrant of the selectmen, &c.

It is also objected, that it does not appear that the meeting was called or holden for the choice of a Representative to Congress, or for the purpose of voting for that officer.  On that point, after alleging that a town meeting for the election of two Representatives to the General Court was duly holden, the indictment goes on to allege, that, at said meeting the inhabitants qualified to vote in said Ward, were also *called on to give* in their votes for Member of Congress, &c.  This, we think, may well be regarded as descriptive of the purpose for which the meeting was warned, that is, in the ordinary language of the warrant, to bring in their votes for Member of Congress, &c., and not, that, at a meeting called for another purpose, the voters were called on to give in their votes, &c.  Such a construction of the language of the indictment would be unreasonable, and wholly uncalled for.

The allegation, that the defendant did, then and there, at said election, give in a vote for Representative to Congress, is, we think, a sufficient allegation, that he gave in a vote within the meaning of the statute—being in fact in the language of the statute itself—and also that it was at the election in Ward Three, the terms, *then and there*, fixing it very clearly.

We perceive no objections to the instructions given to the jury, nor does this point appear to be insisted upon by the respondent's counsel.

We think, there was evidence from which the jury might legally find that the respondent was not a voter in Ward Three.  His residence, so far as that Ward was concerned, was shown from the time of his enlistment into the Second Regiment N. H. Volunteers, until the election in question, which was in March 1863 ; and although no evidence as to his residence previous to his enlisting, was adduced on either side, we think there was evidence tending to prove that he was not a voter in that Ward at the election in March 1863.  It tended clearly to show that he had not actually resided in that Ward for the six months preceding the election ; and it was for the respondent to show that the absence, which had in fact lasted nearly two years, was temporary.  On the contrary, it appeared, that, on his return from the service, in June 1862, he went to board in Ward One, and there remained until the latter part of December of that year,—a period of nearly or quite six months,—and the jury might legally have found that he was so residing with the intention

of making it his home, or, at least, without an intention to go to Ward Three to reside; especially as it did not appear that he had before resided there.    The fact, that he did afterwards marry a resident of Ward Three and go there to live, was merely evidence to be weighed by the jury, as it was not long enough before the election, of itself to entitle him to vote.    *School District* v. *Davis*, 44 N. H. 398.

We think that there was evidence from which it was competent to find that the respondent voted for Marcy for Representative to Congress. The evidence tends clearly to show that he voted for Marcy for some office; that votes for the office of Representative to Congress were cast for Marcy, and for no other office, and that the number of such votes for him corresponded with the whole number checked including the name of the defendant.    This, we think, was sufficient, and there must be

*Judgment on the verdict.*